24 N.J. Super. 143 (1952)
93 A.2d 628
SAMUEL D. WASSERMAN, INC., AND ANOTHER, PLAINTIFFS-RESPONDENTS,
v.
RUDOLPH T. KLAHRE, DEFENDANT-APPELLANT, AND RUSS S. CANDRILLI, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1952.
Decided December 23, 1952.
*145 Before Judges McGEEHAN, BIGELOW and SMALLEY.
Mr. Paul Lustbader argued the cause for the respondents.
Mr. George F. Losche argued the cause for the appellant (Mr. Benedict E. Lucchi, attorney).
The opinion of the court was delivered by BIGELOW, J.A.D.
Klahre, who is the appellant-defendant in the present action, had recovered judgment for $3,791 March 29, 1949, in the Bergen County Court against his codefendant Candrilli. Two years later a writ of execution issued on his judgment, and on September 7, 1951 the sheriff levied upon Candrilli's bank account in the Bogota National Bank, amounting to $2,687. On September 21, after due notice to Candrilli and to the bank, the bank was ordered to pay to the sheriff toward satisfaction of the execution the moneys on deposit in the account. R.S. 2:26-180. The payment was made to the sheriff and from him the moneys came into the hands of Klahre. The following January the plaintiffs Wasserman and Cecere instituted the instant case in the Superior Court against Klahre and Candrilli.
*146 The complaint sets forth that prior to the date of Klahre's levy, Candrilli was doing certain work for one James Loines on premises in Bloomfield; that on or about September 1, 1951 the plaintiffs delivered to Candrilli discharges of notices of intention which they had filed pursuant to R.S. 2:60-112, and releases of mechanics' lien claims and in exchange they each received from him a check drawn on the Bogota National Bank, one for $1,000 and the other for $477; that Candrilli received from Loines $3,000, that is, a sum sufficient for the payment of the checks and deposited the money in his account in the Bogota National Bank on September 5, 1952. The complaint then sets forth that Klahre obtained the money in the bank account toward satisfaction of his judgment. The plaintiffs allege that the funds which Candrilli received from Loines were trust funds for the payment of the obligations of Candrilli for labor and material used in the work at the Bloomfield premises, and they demand judgment against Klahre for the amount of the checks that Candrilli had given them. Since the facts above set forth were not disputed, although the allegation that the Loines money constituted a trust fund was denied, summary judgment was granted to the plaintiffs; whereupon Klahre appeals. The first question is whether the money constituted a trust fund.
The plaintiffs assert upon the appeal that there was an express trust, citing State v. Knauer, 9 N.J. Misc. 581 (Sup. Ct. 1931). But their complaint did not state facts sufficient to show such a trust, and their motion for summary judgment did not advance that theory. The judgment cannot be upheld on that theory. Did a trust or lien arise by operation of law?
"In the absence of statute, one who furnishes material or labor for a building or any structure which is part of the land has no lien, legal or equitable, on the land, the structure, or the contract price." Guise v. John C. Guise, Inc., 116 N.J. Eq. 590 (E. & A. 1934). And see Grover v. Board of Education, 102 N.J. Eq. 415 (Ch. 1928), affirmed 104 *147 N.J. Eq. 197 (E. & A. 1929). The plaintiffs rely on R.S. 2:124-16:
"All moneys received by a contractor from the owner or mortgagee of real estate or any leasehold or other interest therein, while a building is being erected, constructed, completed, altered, repaired or having an addition made thereto, are hereby declared to be trust funds in the hands of such contractor to be applied to the amount of all claims due or to become due and owing from such contractor to all persons furnishing labor or materials to him for the erection, construction or completion of the building or any alteration, repair or addition thereto, and any other reasonable and necessary charge in connection with the carrying on and completion of the work on the building. Any contractor or any officer, director or agent of such contractor who pays or consents to the appropriation of such funds for any other purpose prior to the payment of all claims and charges for the payment of which such funds constitute a trust fund as above provided, shall be guilty of a misdemeanor."
R.S. 2:124-16 originated in section 2 of L. 1932, c. 104, entitled "A Supplement to an act entitled `An act for the punishment of crimes' (Revision of 1898)." The provisions of our Revised Statutes embodying prior laws are construed as a continuation of such laws. R.S. 1:1-4. Presumably no change in the meaning of a statutory provision is intended by the Legislature when it is carried into a revision, even though there be slight changes in the wording. Kessler v. Zink, 136 N.J.L. 479 (E. & A. 1948). There are no material variations in phraseology in the two versions of the enactment, so we can direct our attention particularly to the 1932 act.
Under our former Constitution, as under our present one, the title of a statute operates as a limitation on the enacting clauses, so that a construction which would give the statute a direct effect beyond the object expressed in the title must be rejected. Jordan v. Moore, 82 N.J.L. 552 (E. & A. 1912); St. John, etc., Church v. Gengor, 121 N.J. Eq. 349 (E. & A. 1937). It is entirely clear to us that the scope of the statutory provision on which the plaintiffs build their case, is limited to the creation of a criminal offense; and that no civil action can be based *148 directly on the statute. Cf. Raymond Concrete Pile Co. v. Federation B. & T. Co., 288 N.Y. 452, 43 N.E.2d 486 (Ct. App. 1942); Id., 290 N.Y. 611, 48 N.E.2d 709 (N.Y. Ct. App. 1943).
Penal statutes are, however, often given an incidental effect beyond their primary purpose. If a statute denounces an act as criminal, or imposes a penalty on one who commits the act, then a contract to do the forbidden act is void. Restatement, Contracts, §§ 512 and 580; Brooks v. Cooper, 50 N.J. Eq. 761 (E. & A. 1893). And the failure to perform a duty imposed by a penal statute may give to a member of the class for whose benefit the law was enacted a common law action of negligence. Fielders v. North Jersey, etc., Co., 68 N.J.L. 343 (E. & A. 1902); Evers v. Davis, 86 N.J.L. 196 (E. & A. 1914); Daniels v. Brunton, 9 N.J. Super. 294 (App. Div. 1950), affirmed 7 N.J. 102 (1951); Atkinson v. New Castle, etc., Co., 2 Ex. D. 441 (Ct. App. 1877). And it has been held that the violation of such a statute may be the basis of an estoppel that will entitle the injured party to equitable relief. Noel v. Teffeau, 116 N.J. Eq. 446 (Ch. 1934). In general, see Maxwell on Statutes (1937), 338; Sutherland's Statutory Construction (1943), 5401; Halstead, Laws of England, Torts, § 264, etc.
The statute, R.S. 2:124-16, on which the plaintiffs rely, forbade Candrilli to use the moneys in question prior to the payment of persons furnishing labor or materials. The act was passed for the benefit of such persons. We are satisfied that had Candrilli violated the statute, the plaintiffs would have had whatever civil remedy might be appropriate to the circumstances under the general principles of law or equity. But Candrilli did not violate the statute; the sheriff levied on the fund without leave of Candrilli.
The mingling of the fund with other monies in Candrilli's general bank account did not destroy plaintiffs' interest in the fund. General Motors Acceptance Corp. v. Larson, 110 N.J. Eq. 305 (Ch. 1932); Re Kountze Bros., 79 F.2d 98; 102 A.L.R. 367 (C.C.A. 2, 1935). But *149 presumptively, as to third persons, a bank account is the absolute property of the person in whose name it stands, unless the account is entitled in such a way as to suggest that other parties have an interest in it. The interest that plaintiffs actually had in the account was at most an undisclosed equitable lien. Fidelity, etc., Co. v. McClintic-Marshall Corp., 115 N.J. Eq. 470 (Ch. 1934), affirmed 117 N.J. Eq. 440 (E. & A. 1935). Should such a lien be protected against Klahre? Generally, a bona fide execution purchaser takes free of equities and secret liens. Eckman v. Beihl, 116 N.J.L. 308 (Sup. Ct. 1936). But where the purchaser is the judgment creditor himself and he makes no payment on the purchase price beyond giving credit on the judgment, a difficult question arises. It is sometimes held that he is chargeable with notice even of hidden equities and takes subject to them, and sometimes it is held that he is in the same position as is a stranger who buys at the execution sale and takes free of such equities. 33 C.J.S., Executions, §§ 292-295. In New Jersey, there is no clear rule on the subject. But see Throckmorton v. O'Reilly, 55 A. 56 (Ch. 1903), and Barrett v. Foley, 14 A. 571 (Ch. 1888). We think that in each case the facts must be analyzed to determine on broad principles whether the judgment creditor or the lienor has the stronger claim. In the instant case there was, of course, no execution sale because of the nature of the property which was the subject of the levy, but that circumstance seems of no great moment. Klahre's title is no better or worse than if he were a purchaser at execution sale.
The plaintiffs had a complete remedy under the Mechanics' Lien Law, R.S. 2:60-105, et seq., which they voluntarily surrendered when they executed and delivered discharges of their notices of intention and releases of their lien claims. They received their checks from Candrilli about September 4, 1951, but they seem not to have sent them to the bank for payment until after September 21. If they had presented their checks after the Loines money had been *150 deposited but before September 7, the date of the levy, we take it that the checks would have been paid. If they had acted during the two weeks following the levy, they would have learned of the levy and could have had a hearing on September 21. They waited for four months before taking action. Klahre, on the other hand, proceeded without notice  so far as appears  of any defect in, or lien upon, Candrilli's title to the bank account. Payment to the sheriff, in Klahre's behalf, was ordered by the court having jurisdiction of the matter, after notice to Candrilli and the bank, who were apparently the only interested parties. Klahre's title seems just as strong as the plaintiffs' and we see no reason to disturb it. Potior est conditio defendentis. This conclusion is in harmony with American Lumberman's, etc., Co. v. Bradley Construction Co., 127 N.J. Eq. 500 (Ch. 1940), affirmed 129 N.J. Eq. 278 (E. & A. 1941), and Western Assur. Co. v. Genesee Valley Tr. Co., 171 F.2d 664, 665 (C.C.A. 2, 1948).
For these reasons the judgment entered in the Law Division must be reversed. But there is one other matter which we will mention, although it was not touched upon in the briefs or oral argument. The statute requires that the fund be "applied to the amount of all claims due or to become due and owing from such contractor to all persons furnishing labor or materials to him" for the construction of the building mentioned in the complaint "and any other reasonable and necessary charge in connection therewith." Should not all beneficiaries be joined as parties to the action? Or, if the beneficiaries are too numerous, or their identity is uncertain, should the action be prosecuted as a class suit? We express no opinion on these interesting questions.
Judgment reversed.