OPINION OF THE COURT
Anne G. Feldman, J.
After trial, judgment for plaintiff in the amount of $9,344.40.
Plaintiff, Philip Goldstein, is president of Local 517, an *525 affiliate of the International Production, Service and Sales Employees Union, and a trustee of both the union’s welfare, and pension and retirement funds (hereinafter referred to as "Funds”). He seeks, in his fiduciary capacity, to recover union dues, held in trust from March through August, 1975 and contributions to the Funds for the same period and names as defendants Atreo Manufacturing Company, the corporate employer, and Frank Mangano, vice-president and secretary of Atreo during most of the relevant time period.
Atreo, now bankrupt, failed to appear and a default judgment was entered against it. Defendant Mangano interposed an answer and defended this action.
I. FINDINGS OF FACT
Defendant Mangano first became associated with Atreo in October, 1973, when Atreo was purchased by ALF Industries of which Mangano was an officer, director and principal stockholder. Sometime thereafter, prior to April, 1975, Mangano was elected secretary of Atreo and also became one of its three vice-presidents. Mangano’s own testimony showed that Atreo had been in serious financial difficulty at the time he became associated with it, and that when the president of Atreo was dismissed in the winter of 1974, Mangano was asked to step in to attempt to avert Atreo’s approaching insolvency.
Mangano testified he had no responsibility for the day-today operations of the corporation but spent most of his time searching for capital to rescue Atreo from insolvency. He also testified that he could not have known Atreo was failing to meet its payments to the union, because these payments were not itemized on the financial reports he received. However, the court finds more credible the testimony of plaintiff Gold-stein, who stated that he and Mangano frequently discussed Atreo’s delinquency in the payment of union dues and Funds’ contributions, and that during these discussions, Mangano indicated he was already aware of that delinquency. Mangano also testified that he assumed "all financial responsibility” for Atreo, and that he reviewed monthly the financial statements of the corporation. Therefore, the court finds Mangano, by his own admission, was at all times fully aware of the precarious financial situation of Atreo and of its potential insolvency. This knowledge was enough to alert him to the very real possibility that Atreo would fail in its financial responsibilities and should have led him to make specific inquiry into whether *526 Atreo was current in the check-off of union dues and payment of contributions to the Funds.
Atreo received the union dues in a trust capacity; the moneys when collected became the property of the union. (Collective Bargaining Agreement, art 18.) Although Mangano was not a signatory to the collective bargaining agreement, he was the only active officer of the corporation and was under a duty to ensure that Atreo was meeting its contractual obligations toward the union dues and Funds.
II. CONVERSION
Plaintiff alleges a cause of action in conversion to recover the union dues on the grounds that Mangano, as an officer and fiduciary of Atreo Corporation, is personally liable for their misappropriation.
Defendant argues that this cause of action must fail because the funds were not segregated and specifically identifiable and, therefore, not appropriately the subject of an action in conversion. To support his argument, defendant relies on Independence Discount Corp. v Bressner (47 AD2d 756). There, plaintiff sought to hold two officers and the majority shareholders of a corporation personally liable in conversion for the proceeds of a sale of secured merchandise. The court dismissed the action because there were no specific funds at issue. However, Independence is clearly distinguishable on its facts. There, the security agreement governing the relationship between the parties obligated the corporate defendant to pay over to plaintiff specific proceeds only upon the sale of any of the secured products. Payment could be made from any fund and the corporation was under no duty to segregate the payments from the general corporate account. Here, under the collective bargaining agreement, a definite monthly sum of $6 per employee was deducted from each worker’s wages and, Mangano, the only active corporate officer, was obligated to ensure that the corporation segregated these sums from the general corporate account and paid them over regularly to plaintiff.
On the issue of Mangano’s personal liability in conversion, this court finds controlling the Court of Appeals reasoning in Hinkle Iron Co. v Kohn (229 NY 179). In Hinkle, the defendant, as corporate president, assigned to plaintiff a certain sum of money designated to become due the corporation under a contract with New York City. After the city made payment, defendant deposited the money in the corporate account. The *527 corporation, with the knowledge of defendant, then disbursed the moneys for general corporate purposes. The court held defendant personally liable for the amount converted. It reasoned that the corporation had received and deposited the moneys in a trust capacity, since it was only authorized to hold the sum for purposes of delivery to plaintiff. That trust relationship precluded the corporation from lawfully using the money for another purpose and subjected the trustee, i.e., the corporate officer, to personal liability for violating the trust agreement.
In a more recent decision, AMF, Inc. v Algo Distrs. (48 AD2d 352, 358), the Appellate Division, on similar facts, adopted the reasoning of Hinkle and stated, "where a diversion of the proceeds occurs, the debtor and the individual corporate officer who participated in the misconduct are personally liable.”
III. LIABILITY UNDER SECTION 198-C OF THE LABOR LAW
Plaintiff argues that Mangano is liable for contributions to the Funds under section 198-c of the Labor Law. That section imposes criminal responsibility on Mangano as vice-president of a corporate employer, and, plaintiff argues, this criminal liability forms the basis for civil liability.
Defendant argues in response that section 198-c does not give plaintiff a civil remedy and, even assuming, arguendo, that it does, section 198-c of the Labor Law is pre-empted by the Employees Retirement Income Security Act of 1974 ("ER-ISA”) (US Code, tit 29, § 1000) which supersedes all State regulation of employee benefit plans.
The court notes first that section 198-c clearly covers only defendants’ failure to turn over the Funds’ contributions. (The court has already determined that misappropriated union dues may be recovered under a theory of conversion.)
Section 198-c of the Labor Law provides in part:
"1. * * * [A]ny employer who is a party to an agreement to pay or provide benefits or wage supplements to employees or to a third party or fund for the benefit of employees * * * who fails, neglects or refuses to pay the amount or amounts necessary * * * within thirty days after such payments are required to be made, shall be guilty of a misdemeanor * * * Where such employer is a corporation, the president, secretary, treasurer or officers exercising corresponding functions shall * * * be guilty of a misdemeanor.
*528 "2. * * * [T]he term 'benefits or wage supplements’ includes, but is not limited to, reimbursement for expenses; health, welfare, and retirement benefits; and vacation, separation or holiday pay.” (Emphasis added.)
In order for criminal liability to obtain, there need be no proof that Mangano intended to withhold payments to the Funds, or that he had knowledge that the payments were being withheld.
In People v Ahrend Co. (118 NYS2d 426, 428, affd 283 App Div 1054, affd 308 NY 112), the trial court interpreted a predecessor to section 198-c and held: "A person * * * conducting the affairs of a corporation, and * * * fully acquainted with the precarious financial condition of the corporation * * * must have had knowledge of the corporation’s inability to meet its obligations.” (Emphasis added.)
More recently, in People v Trapp (20 NY2d 613, 618), the Court of Appeals noted that a corporate officer is liable under section 198-c if "he stood in such a relation to the corporate affairs that it may be presumed that he knew or should have known of and taken some steps to prevent the nonpayment.”
New York law has long recognized that where a statute imposes a duty, breach of that duty gives the offended party a cause of action. As long ago as 1879, in Willy v Mulledy (78 NY 310, 314), the Court of Appeals declared: "whenever one owes another a duty, whether such duty be imposed by voluntary contract or by statute, a breach of such duty causing damage gives a cause of action. Duty and right are correlative”.
Recently, in Brody v Save Way Northern Blvd. (37 Misc 2d 240, revd 19 AD2d 714, revd 14 NY2d 576), the Court of Appeals reinstated the decision of the Supreme Court which, relying on Judge Lehman’s reasoning in Schmidt v Merchants Dispatch Transp. Co. (270 NY 287, 305), stated: "It seems well settled that, 'A statute "creates” no liability unless it discloses an intention express or implied that from disregard of a statutory command a liability for resultant damages shall arise "which would not exist except for the statute.” ’ ” (37 Misc 2d 244.)
A further qualification for the existence of a civil remedy is that plaintiff be a member of the class sought to be protected by the statute. "Where disregard of [a statute] causes loss to one of the class for whose special benefit it was enacted his *529 right to recover damages is implied.” (Lang v New York Cent. R. R. Co., 227 NY 507, 508.)
Thus, there is a two-fold test which, when met, gives rise to a civil remedy where there is a statutory breach. First, the cause of action must impose liability nonexistent at common law, and, second, the plaintiff must be a member of the class for whose protection the statute was enacted.
This test was applied in General Teleradio v Manuti (284 App Div 400, 404) in which the court said: "where a criminal or penal statute imposes a duty but furnishes no civil remedy to the protected class, a breach of that duty gives rise to a cause of action in favor of the latter class.”
Defendant relies upon General Teleradio in support of his argument that section 198-c implies no such civil cause of action. However, the court is not persuaded by defendant’s contention that both defendants would have been liable under common law. Clearly, under common law, Mangano as a nonsignatory to the collective bargaining agreements could not be charged with their breach. However, under section 198-c, as a corporate officer, he is held personally responsible for the corporation’s failure to make payments. Therefore, contrary to defendant’s argument, the statute does create a duty nonexistent at common law.
As noted, in order to meet the second part of the test, plaintiffs must be members of the class whose interests are sought to be protected by the statute. Section 198-c was enacted for the benefit and protection of workers. The plaintiff, as trustee of the funds set up to provide for pension and welfare benefits, is an appropriate representative of the class of individuals whose interests the law is designed to protect, and as such is entitled to assert this claim.
Section 198-c has twice been found to contain an implied right of civil action. (Johnson v Clay Partition Co., NYLJ, July 8, 1977, p 12, col 3; Bennett v 59-94 Broad Parking, No. 9623/ 74, Supreme Ct, NY County, decided Dec. 6, 1974.)
In Johnson, Justice Asch noted: "[S]ection 198-c was created for the protection of workingmen to guarantee that they will be paid their wages and fringe benefit contributions. The plaintiffs, as trustees, on behalf of such workingmen, have a civil cause of action based on the criminal statute.”
This court agrees. Atreo’s failure to contribute to the Funds, as required by the agreements creating those funds, gives *530 plaintiff a cause of action, not only against Atreo, now defunct, but also against certain corporate officers. Because Mangano was the corporate officer responsible under section 198-c for Atreo’s failure to contribute, plaintiff has properly sought relief in this civil action against him.
However, the court’s conclusion that Mangano is liable under section 198-c must rest on a determination that section 198-c has not been pre-empted by ERISA. Plaintiff contends that there is no pre-emption, both because the statute does not deal even remotely with an employer’s failure to make required contributions and because section 198-c falls within a specifically enumerated exception contained in ERISA. These arguments will be discussed successively.
IV. THE EFFECT OF ERISA ON SECTION 198-C
Congress adopted ERISA in 1974 to correct the flagrant abuses within employee benefit and pension plans, which had reached nearly epidemic proportions across the country. Because of the scope of these plans and the existence of unions with national memberships, it was believed that the problem could only be effectively addressed on the national level. Consequently, Congress determined that Federal regulation should supersede the actions of the individual States, and a broad pre-emption provision was drafted into the statute.
An analysis of the legislative history which led to the adoption of ERISA supports defendant’s argument that ERI-SA’s pre-emption is nearly total and that except for specific exclusions enumerated in the statute itself, ERISA effectively excludes all State participation in the regulation of employee benefit plans. This view is reflected in the concurrent resolution presented by the House and Senate Conference Committee to the full Congress by Committee Chairman Senator Harrison Williams. "[W]ith the narrow exceptions specified in the bill, the substantive enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in its broadest sense”.
Senator Javits, a Conference Committee member, noted that the emergence of a "comprehensive Federal interest” would require the displacement of State action except "for certain exceptions.” He concluded: "In view of Federal preemption, State laws compelling disclosure from private welfare or pension plans, imposing fiduciary requirements on such plans, *531 imposing criminal penalties on failure to contribute — unless a criminal statute of general application * * * will be superseded. It is also intended that a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations”. (Emphasis added.)
The Federal courts, relying upon this language of intent, almost unanimously have adopted a broad pre-emption stance, as the cases relied upon by both the plaintiff and defendants indicate. (See, e.g., Wadsworth v Whaland, 562 F2d 70, cert den — US —, 98 S Ct 1630, New Hampshire’s statute found to be a law regulating insurance and thus expressly exempt from ERISA’s pre-emption provision; Azzaro v Hartnett, 414 F Supp 473, affd 553 F2d 93, cert den sub nom. Hartnett v Azzaro, — US —, 98 S Ct 71, New York State Insurance Superintendent held precluded by ERISA from inquiring into the pension benefit status of a plan participant; Hewlett-Packard Co. v Barnes, 571 F2d 502, California’s regulation of health plan coverage held pre-empted by ERISA despite ERISA’s silence on the subject; Wayne Chem. v Columbus Agency Serv. Corp., 567 F2d 692, ERISA’s broad pre-emption recognized, but employee benefit plan found to be properly regulated by the State’s insurance law which is exempted under ERISA; Insurer’s Action Council v Heaton, 423 F Supp 921, Minnesota’s Comprehensive Health Insurance Act of 1976 held within ERISA’s insurance exception; see, also, Bell v Employee Security Benefit Assn., 437 F Supp 382.)
This comprehensive review of Federal decisions on the scope of ERISA’s pre-emption persuades this court that ERISA’s failure to provide a remedy does not exempt this case from the pre-emption provision. However, the Federal courts have recognized the problem of regulatory voids and, where possible, have construed the ERISA exemptions broadly so as not to leave individuals without a remedy. (See, e.g., Wadsworth v Whaland, supra; Insurer’s Action Council v Heaton, supra; Wayne Chem. v Columbus Agency Serv. Corp., supra.)
The only ERISA exception relevant to this action is section 1144 (subd [b], par [4]) of title 29 of the United States Code, which declares only that the pre-emption clause shall not apply to any "generally applicable criminal law of a State”, but does not define that phrase. A generally applicable law is one which extends to the entire State and embraces all persons or things of a particular class (McKinney’s Cons Laws of NY, Book 1, Statutes, § 32, subd b). "[T]he Penal Law of the *532 State is a general law. It has general application to all of the inhabitants of the State”. (People v Wilkerson, 73 Misc 2d 895, 898.)
Defendant argues, however, that because section 198-c is not found in the penal code, it cannot be classified as a "generally applicable criminal law of a state”. Research reveals that until the laws of New York State were reorganized in 1965, section 198-c did appear in the penal code (Penal Law, § 962-a; see L 1958, ch 825). No substantive change was made in the law at the time of the recodification, and there is nothing in the Session Laws to indicate that any change in its import was intended by relocating it. Thus, the court sees the reorganization as undoubtedly a product of legislative "tidying” and in no way an indication of a shift in legislative thinking on section 198-c’s status as a criminal law. That same intent was manifest in the Legislature’s later shifting of section 198-a, which imposes criminal penalties on an employer who fails to pay wages, from the Penal Law to the Labor Law. (Penal Law, § 1272, recodified and renum L 1965, ch 1031.) It is clear that section 198-c falls within the ERISA exemption as a statute affecting all employers within the State, thus permitting the assessing of liability against Mangano under that statute.
V. DAMAGES
The proof of the damages suffered by plaintiff in this case presents a particular problem. Plaintiff seeks to recover union dues and Funds’ contributions for the months of April through August, 1975. However, Atreo’s books and records are not available, and Mangano testified that he does not know where they are. Plaintiff testified that the only records the union maintained on the amount of dues and contributions owed were premised on information supplied by Atreo and that the union always relied on Atreo’s books and records to determine how much was owed for any given month under the relevant agreements. Thus, plaintiff has never had an independent source from which to compute how much was owed the union.
Defendant argues that plaintiff’s inability to prove damages by conventional evidentiary means should preclude his recovery.
"The rule of certainty as applied to the recovery of damages does not require mathematical accuracy or absolute certainty *533 * * * but only that the loss or damage be capable of ascertainment with reasonable certainty.” (13 NY Jur, Damages, § 17.)
In light of Mangano’s position with Atreo, the court believes he had an obligation to ensure that the corporate records did not disappear. There was no indication from Mangano’s testimony that when the corporation became insolvent, he ever made an effort to preserve those records. It would be especially unfair to penalize plaintiff, who was not responsible for the corporate records, because these records are no longer available.
Plaintiff bases its calculations of the number of employees for whom dues and contributions were owed, on the corporate records for a comparable period of the previous year. Although defendant argues that the number of employees was continually decreased as Atreo approached insolvency, no specific evidence on this point was adduced. Since plaintiff had no recourse to Atreo’s employment records, the defendant had the burden of proving a decrease in the number of employees. Defendant failed to meet that burden. Therefore, the court finds plaintiff’s reliance on the employment records for a comparable period of the prior year a reasonable and adequate measure of moneys owed.
However, Mangano testified credibly that his relationship with Atreo terminated on August 1, 1978 when the corporation’s assets were liquidated. Of course, he cannot be held liable for union dues which became due after he ceased any involvement with the company. Furthermore, plaintiff is also precluded under section 198-c from recovering contributions due the Funds for both July and August, since the July contributions did not become due until 30 days after the month had ended when Mangano was no longer responsible for the Funds’ debts.