TRUSTEES OF THE LOCAL 478 TRUCKING AND ALLIED INDUSTRIES PENSION FUND AND TRUSTEES OF THE JOINT WELFARE OF EMPLOYERS AND LOCAL 478, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, PLAINTIFFS, v. FRANK PIROZZI, SR., JOSEPH PIROZZI, VICTOR PIROZZI AND JOHN PIROZZI, DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Heard July 25, 1983—Decided December 22, 1983.

298

300

*Steven A. Satkin, Craner & Nelson,* P.A., for plaintiffs.

*Yale Manoff, Weinberg & Manoff,* P.A., for defendant Joseph Pirozzi.

MARGOLIS, J.S.C.

In this action, plaintiffs, Trustees of the Local 478 Trucking and Allied Industry Pension Fund and Trustees of the Joint Welfare Fund of Employers Local 478, International Brotherhood of Teamsters (Trustees) seek to impose personal liability upon the remaining defendant, Joseph Pirozzi (defendant), a former corporate officer and stockholder of Asbestos Transportation Co., Inc. (Asbestos). Asbestos had a collective bargaining agreement with Trustees which required contributions to the respective Pension and Welfare Funds and became in arrears on certain of these contributions resulting in a suit by, and ultimately a judgment in favor of, Trustees. Asbestos has since become insolvent and has made an assignment for the benefit of its creditors.

Trustees bring the instant action under the provisions of *N.J.S.A.* 2A:170–90.2 which, as pertinent, reads as follows:

> In addition to any other penalty or punishment otherwise prescribed by law, any employer who is party to an agreement made with a collective bargaining agent or with an individual employee which requires the payment of (a) wages or of benefits or (b) contributions for the support of a fund out of which benefits may be paid including, without limitation upon the generality of the foregoing, any pension fund, welfare fund ... and who knowingly and willfully fails or refuses to make such payments within 30 days after such payments are required by said agreement to be made ... is a disorderly person. If such employer is a corporation, the officer or employee responsible for such willful failure or refusal is a disorderly person.

There is projected for determination by this court, two essential issues: (1) Did defendant, acting on behalf of Asbestos, knowingly and willfully fail and refuse to make payments for the time period in question (1977–1980) and if so (2) Does this statute, calling for the imposition of penal sanctions, create a civil personal liability upon the defendant.

The matter was tried before this court sitting without a jury and the court had an opportunity to observe the demeanor of the witnesses and determine their credibility. A review of the pertinent books and records of Asbestos and other related companies as well as the individual defendant's tax returns by Trustees' accountant disclosed that during the years 1977–80 Asbestos was paying its debts in the normal course of its business including officers' salaries, rents, taxes, interest on obligations, payments to Trustees (not in full) and other routine operating expenses. There was sufficient capital in all of those years to have paid Trustees in full, however to do so would have left many of the other obligations of Asbestos unpaid.

Asbestos had been in the trucking business with essentially one customer: to wit, Johns-Manville. The building industry in which Manville was involved was severely depressed during the years in question and Asbestos along with other entities serving that industry were hard pressed to meet expenses; operating costs had increased and Asbestos had a serious cash flow problem.

In order to attempt to continue Asbestos as a variable entity in the hope of surviving this drought, defendant and other

officers of the corporation attempted to make payments on the mounting obligations, ultimately without success. Asbestos sustained operating losses for all the years in question except 1978 which produced a small profit and, in fact, defendant, together with other officers of the corporation, advanced significant sums in loans to the corporation, a large portion of which have never been repaid. The amount due and owing to Trustees for the years in question is $30,463.00.

The proofs disclose that during this period defendant and other principals of Asbestos made a determination to pay certain obligations as opposed to others and attempted to continue to meet operating expenses for their vehicles and employees, occasionally using their own funds to do so. Asbestos essentially paid only those creditors necessary to keep the business afloat, including state and federal taxes.

It should be noted in passing that the books and records of Asbestos were kept in the ordinary course of business and disclosed no discrepancies. Officers' salaries were moderate and no unusual payments were made to defendant or any other principal of Asbestos.

It clearly appears that had defendant and the other principals of Asbestos paid Trustees in full for the years in question Asbestos would have been forced out of business long before its ultimate demise. Defendant and the other principals of Asbestos knew of the outstanding obligations to Trustees during the years in question and there was sufficient capital available in those years to have paid Trustees in full. Asbestos, through the defendant and its other principals, made a business judgment not to do so. In 1979 the principals of Asbestos knowingly chose to pay or repay certain officers' loans as opposed to making payments to Trustees and during this period, Asbestos, through the defendant, made *optional* payments to certain Trustees' funds for non-union employees while failing to make mandatory payments for union employees. Defendant was one of the non-union employees involved.

Defendant testified that he was at all times aware of the arrearages in the payments to the funds in question.

At the end of plaintiffs' case, Trustees voluntarily dismissed that portion of its complaint charging defendant with conversion. Defendant produced no witnesses, evidence or testimony.

The initial issue projected was whether defendant "knowingly and willfully failed or refused" to make payments for the years in question to the funds represented by Trustees.

Defendant concedes he knew of the arrearages to Trustees at all times relevant but contends, however, that he did not "willfully" fail or refuse to make the payments.

■ The descriptive word "willfully" imports the notion of conduct which is purposeful and knowledgeable. *State v. Wein*, 80 *N.J.* 491, 498 (1979).

In *State v. Burden*, 126 *N.J.Super.* 424, 427 (App.Div.1974), certif. den., 65 *N.J.* 282 (1974), the court construed the word "willfully" in the context of a child neglect charge pursuant to *N.J.S.A.* 9:6–1, to mean "intentionally and purposefully" as distinguished from "inadvertently or accidentally" and found that proof of evil intent and knowledge of resulting harm was not necessary. *Accord, State v. Muniz*, 150 *N.J.Super.* 436, 447 (App.Div.1977), certif. den., 77 *N.J.* 473 (1978).

■ This court is satisfied that defendant made a conscious decision as to which creditors were to be paid as opposed to making payment in full to Trustees. Defendant's failure to pay Trustees was not inadvertent nor accidental. His assertion that Asbestos could not afford to pay these funds, assuming its truth, is of no consequence since the existence of good faith would not make the defendant's failure or refusal to pay any less willful. The court does not question defendant's judgment. However, the exercise of that judgment was made with full knowledge of the unpaid obligation to Trustees and constituted a willful failure or refusal to make the payments in violation of *N.J.S.A.* 2A:170–90.2.

The remaining issue is whether or not *N.J.S.A.* 2A:170–90.2 creates or gives rise to an implied civil cause of action against defendant. The precise question appears to be one of novel impression in this state.

As pertinent, the statute provides:

> In addition to any other penalty or punishment otherwise prescribed by law, any employer who is party to an agreement made with a collective bargaining agent or with an individual employee which requires the payment of (a) wages or of benefits or (b) contributions for the support of a fund out of which benefits may be paid including, without limitation upon the generality of the foregoing, any pension fund, welfare fund ... and *who knowingly and willfully fails or refuses to make such payments within 30 days after such payments are required by said agreement to be made ... is a disorderly person. If such employer is a corporation, the officer or employee responsible for such willful failure or refusal is a disorderly person.* [*N.J.S.A.* 2A:170–90.2; emphasis supplied.]

In reliance upon *Cort v. Ash,* 422 *U.S.* 66, 95 *S.Ct.* 2080, 45 *L.Ed.*2d 26 (1975), Trustees contend that it is permissible to infer a private cause of action from a penal statute so long as the penal statute does not explicitly deny such cause of action. *Id.* at 82, 95 *S.Ct.* at 2089. Trustees recognize, however, that the search for a private cause of action within the confines of a penal statute must be guided by statutory construction and legislative intent. *Middlesex Cty. Sewerage Auth. v. Sea Clammers,* 453 *U.S.* 1, 13, 101 *S.Ct.* 2615, 2622, 69 *L.Ed.*2d 435 (1981).

Employing what it perceives to be the test used by the court in *Cort v. Ash, supra,* Trustees urge that a civil remedy is appropriate in this case since: (1) *N.J.S.A.* 2A:170–90.2 was intended to benefit a particular class of people and to guard against a specific harm; (2) the statute imposes a legal duty upon corporate officers and employees that did not exist at common law; (3) the legislative purpose of protecting employees from the non-payment of benefits would not be adequately fulfilled by imposing criminal sanctions alone.

Trustees further argue that since the legislative statement accompanying the statute at issue makes it clear that *N.J.S.A.* 2A:170–90.2 was modeled after a nearly identical New York

Statute, New York Labor Law § 198–c, this court should accord significant weight to New York cases that have imposed civil liability under § 198–c. *Excavators Union Local 731 Welfare Fund v. Zurmuhlen,* 68 *A.D.*2d 816, 414 *N.Y.S.*2d 140 (App. Div. 1st Dept.1979); *Johnson v. Clay Partition Co., Inc.,* 93 *Misc.*2d 414, 402 *N.Y.S.*2d 912 (Sup.Ct.N.Y.Co.1977); *Goldstein v. Mangano,* 99 *Misc.*2d 523, 417 *N.Y.S.*2d 368 (Civ.Ct.N.Y. 1978), *Sasso v. Vachris,* 116 *Misc.*2d 797, 456 *N.Y.S.*2d 629 (Sup.Ct.Nassau Cty.1982).

Lastly, Trustees urge a textual argument. They contend that the inclusion of the words "In addition to any *other penalty or punishment* otherwise prescribed by law," *N.J.S.A.* 2A:170–90.2. [Emphasis supplied], demonstrates that the penal sanction of *N.J.S.A.* 2A:170–90.2 is cumulative rather than exclusive.

In response to these arguments, defendant contends that *N.J.S.A.* 2A:170–90.2 accords no civil remedy and he relies primarily on New Jersey cases wherein our courts have refused to imply a civil cause of action from a penal statute. *First Nat'l State Bank of N.J. v. Carlyle House, Inc.,* 102 *N.J.Super.* 300 (Ch.Div.1968), aff'd. 107 *N.J.Super.* 389 (App.Div. 1969); *Universal Supply Co. v. Martell Construction Co., Inc.* 156 *N.J.Super.* 327 (App.Div.1978), *Houdaille Construction Materials v. American Telephone & Telegraph Co.,* 166 *N.J. Super.* 172 (Law Div.1979).

Defendant places particular emphasis on *Plevy v. Schaedel,* 44 *N.J.Super.* 450 (Law Div.1957), where the court determined that New Jersey's Mechanic's Lien Law, *N.J.S.A.* 2A:102–10, did not give rise to a civil remedy. Defendant also relies on *Samuel D. Wasserman, Inc. v. Klahre,* 24 *N.J.Super.* 143 (App.Div.1952), where the court determined that the title of the Mechanics Lien Law limited its scope to criminal sanctions.

Lastly, defendant distinguishes the New York cases relied upon by Trustees on the ground that they are premised on the tort liability doctrine, which is firmly embedded in New York

law, but which New Jersey has not adopted. The doctrine permits a civil duty to be established from a penal statute, and further accords a civil remedy to a party aggrieved by the breach of that duty.

Thus the issue is whether New Jersey law will permit the creation of a civil remedy from a statute that is unequivocally penal on its face.

■ Preliminarily, it must be noted that the New York cases that have construed § 198-c as affording a civil remedy were all decided subsequent to New Jersey's enactment of *N.J.S.A.* 2A:170–90.2 in 1966. *See Excavators Union Local 731 Welfare Fund v. Zurmuhlen,* 68 *A.D.*2d 816, 414 *N.Y.S.*2d 140 (App. Div. 1st Dept.1979); *Johnson v. Clay Partition, Inc.,* 93 *Misc.* 2d 414, 402 *N.Y.S.*2d 912 (Sup.Ct.N.Y.Co.1977); *Goldstein v. Mangano,* 99 *Misc.*2d 523, 417 *N.Y.S.*2d 368 (Civ.Ct.N.Y.1978); *Sasso v. Vachris,* 116 *Misc.*2d 797, 456 *N.Y.S.*2d 629 (Sup.Ct. Nassau Cty.1982). Therefore, the weight to be accorded these cases is minimal, at best, since this State's legislature was necessarily unaware of these opinions at the time it enacted the New Jersey statute. Clearly, legislative intent to permit a civil remedy cannot be inferred when case law supporting such a remedy was decided after the Legislature acted. Trustees' additional argument, that this court should presume that our Legislature knew that the New York statute would be construed as it ultimately was, is without substance.

Although there are no reported decisions in this state dealing with the precise question here at issue, there is a body of case law that makes it clear that the New Jersey courts are generally loathe to imply a civil remedy from a penal statute. *Jalowiecki v. Leuc,* 182 *N.J.Super.* 22 (App.Div.1981); *Osback v. Lyndhurst Tp.,* 7 *N.J.* 371 (1951); *Plevy v. Schaedel, supra; Samuel D. Wasserman, Inc. v. Klahre, supra.*

In *Jalowiecki,* defendants violated an administrative regulation requiring sewage disposals to be kept free from any encroachments. *N.J.A.C.* 7:9–2.1 et seq. The statutory basis

for the regulation was contained within Title 58 of the statutes, and the pertinent sections of that statute provided that violators would be subject to penalties including a fine or an injunction.  *N.J.S.A.* 58:11–38;  *N.J.S.A.* 58:11–39 to 41.  Plaintiffs, the purchasers of a home sold by the violators, contended they were entitled to a judgment for damages under *N.J.A.C.* 7:9–2.-22.  Thus the issue before the court was whether the regulation created a private cause of action for damages.

Finding an absence of any express provision for a civil remedy, the court then discussed the theory of implied civil remedies.

(N)either the act nor the regulations promulgated thereunder expressly provide for a private civil remedy or grant to an injured party the right to maintain a private cause of action for damages.  Thus, for plaintiff to maintain an action for damages under *N.J.A.C.* 7:9–22.2, such a private cause of action would have to be implied from the statutory scheme involved or the administrative regulations promulgated thereunder.  [*Id.* 182 *N.J.Super.* at 28.]

The court ultimately concluded that in its view "a private civil remedy or private cause of action for damages may not be implied from either."  *Id.*

The court upheld the "longstanding" rule of *Osback v. Lyndhurst Tp., supra,* wherein a town employee injured a bystander who sued the municipality.  Plaintiff prevailed but apparently the town had not obtained the statutorily required liability insurance to satisfy plaintiff's claim.  Plaintiff then sued the town to recover the amount he would have recovered had the town complied with the statute.  The court rejected plaintiff's argument that he was entitled to damages under the insurance statute:

We are cognizant of the individual hardship which may occasionally befall an employee as a result of a municipality's default in obeying the legislative command.  The statute, however, while stating the requirement of public liability insurance in mandatory language, does not provide a remedy for those who may suffer through a failure to comply with its terms.  If it had done so, the right to recover would be clear ...  Since no right of action by the appellant against the township existed prior to the statute, and since no such right was specifically created by it, in our opinion the complaint must fall.  We can see no general evil results from, or greatly unbalanced equities arising out of, a continuation of what seems a well fortified rule, nor is there a cogent

reason why the previous apparently wise adjudications on this subject should be departed from. [*Osback v. Lyndhurst Tp., supra,* 7 *N.J.* at 376.]

No express provision for a civil remedy is contained in *N.J.S.A.* 2A:170–90.2.

■ Thus it must be determined whether or not a civil remedy can be properly implied from *N.J.S.A.* 2A:170–90.2 under New Jersey law. The holdings in *Osback* and *Jalowiecki* appear not to support such a finding. Both cases represent a recognition by this state's courts that although an individual may be harmed by the violation of a penal statute, the implication of a civil remedy from that penal statute will not follow. There can be no doubt that Trustees in the instant case would have had no cause of action against the individual defendant in this matter prior to the enactment of *N.J.S.A.* 2A:170–90.2, since defendant signed the Collective Bargaining Agreement as a corporate representative and not in his individual capacity. Thus *Osback* held that since no civil cause of action was "specifically" created by the statute "the complaint must fall." *Osback, supra,* 7 *N.J.* at 376.

■ Moreover, Trustees' argument is additionally weakened by the fact that a finding of civil liability in this case would not only impose a civil obligation where the Legislature saw fit to only impose penal sanctions but would unduly undermine the theory of limited liability for corporate officers. This is a consideration which neither the Supreme Court in *Osback, supra,* nor the Appellate Division in *Jalowiecki, supra,* had to address. It could be argued that the Legislature made a conscious decision to forego the theory of limited liability for corporate debts when it enacted *N.J.S.A.* 2A:170–90.2 and, therefore, that should not now be a relevant consideration for this court. However, the more persuasive argument is, that having permitted a personal penal sanction for failure to pay a corporate debt but having stopped short of creating a civil damage remedy therefor, the Legislature evidenced an intent not to do that which Trustees would have this court do.

The statute in question imposes penal sanctions not only as to corporate officers but as to corporate employees as well. Thus, to interpret the statute as affording a civil remedy would not only pierce the corporate veil but would have the further effect of holding *any employee* of a corporation who may have merely made a ministerial decision to pay one creditor as opposed to another in order to keep a business afloat (as was done in this case), personally liable in money damages. Such a construction of *N.J.S.A.* 2A:170–90.2 is repugnant to this court.

In *Jalowiecki,* the court recognized the *Cort* test urged by Trustees herein but would not abandon the *Osback* test previously discussed:

> *Even* if this rigid rule discussed and reaffirmed in *Osback v. Lyndhurst Tp.* has given way over the past 30 years to the more modern view that a private cause of action for violation of administrative regulations may be implied in an appropriate case ... nevertheless we hold that plaintiffs could not maintain a private cause of action for damages under the regulation here involved. [*Id.* 182 *N.J.Super.* at 29; emphasis supplied.]

When a state statute is involved, the *Cort* test is three-pronged.

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," ... Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such remedy for the plaintiff? [*Cort, supra,* 422 *U.S.* at 78–79, 95 *S.Ct.* at 2087–2088; emphasis in original.]

Even if the *Cort* test were to be the test adopted by New Jersey courts, just as in *Jalowiecki* the test would not be met here. In *Jalowiecki* the court determined that the first prong of the test was not met since the statutory and regulatory scheme there at issue was enacted to protect the public health in general as opposed to a special class of which plaintiff was a member. In the instant case, however, it would appear that *N.J.S.A.* 2A:170–90.2 was enacted for the benefit of those employees who enter into collective bargaining agreements with their employers who subsequently default on their obligations. Thus, the first prong would be met in the case at bar.

As to the second prong of legislative intent, the *Jalowiecki* court found that the Legislature was primarily concerned with expedited agency enforcement of the act and regulations, rather than with providing a private remedy, and therefore found that that part of the test was not satisfied.

■■ Similarly, in the instant case, the second prong of the *Cort* test has not been satisfied, although for reasons different from those expressed in *Jalowiecki*. First, under *Samuel D. Wasserman, Inc. v. Klahre, supra,* it is clear that the "title" given a statute is indicative of its scope as well as the legislative intent.

> Under our former Constitution, as under our present one, the title of a statute operates as a limitation on the enacting clauses, so that a construction which would give the statute a direct effect beyond the object expressed in the title must be rejected ... It is entirely clear to us that the scope of the statutory provision on which the plaintiffs build their case, is limited to the creation of a criminal offense, and that no civil action can be based directly on the statute. [24 *N.J.Super.* at 147–148.]

The title of *N.J.S.A.* 2A:170–90.2 is: "Failure of employer to pay wages or benefits within time specified; *penalty for violation.*" Certainly, the underscored portion of the title is indicative of the Legislature's intent to limit the scope of the statute to penalizing the wrongdoer as opposed to affording a civil remedy to an aggrieved party.

*N.J.S.A.* 2A:169–1 et seq. concerns itself with Disorderly Persons and clearly reveals an intent of the Legislature to prosecute and punish those individuals adjudged to be disorderly persons under the "General Penalty" provisions of 2A:169–4 et seq.

Additionally, Chapter 170 of the New Jersey Statutes is entitled *"Disorderly Persons Generally"* and Article 9A, the Article within which *N.J.S.A.* 2A:170–90.2 appears, is the part of that Chapter that deals with "acts relating to employment and employees." All of the sections contained therein relate to disorderly persons offenses. The remainder of the Articles

contained in Chapter 170 all deal with the specific enumeration of various acts constituting disorderly persons.

Indicative of the legislative intent is the placement of *N.J.S.A.* 2A:170–90.2 within the scheme of this state's punishment laws as opposed to its placement in a scheme of statutes imposing civil liability. It is interesting to note that the similar New York statute which has been construed by that state's case law as affording a civil remedy, was placed by the Legislature within the context of its civil remedial statutes. Labor Law, Laws 1921, Chap. 50, Articles 1 thru 20.

Lastly, but perhaps most significantly, the mere absence of any explicit provision for a civil remedy is indicative, in and of itself, of a legislative intent not to permit any such remedy. Certainly, if the Legislature had desired to implement a civil counterpart to *N.J.S.A.* 2A:170–90.2, it could have done so. In *Plevy v. Schaedel,* 44 *N.J.Super.* 450 (Law Div.1957), the court refused to allow plaintiffs a civil remedy under New Jersey's Mechanic's Lien Law. It reasoned that since the Legislature had implemented a civil remedy to accompany the criminal statute dealing with public contracts but had not enacted a civil remedy to accompany the criminal statute dealing with private contracts, the court was not free to imply one. Although the argument against a civil remedy was more compelling in *Plevy* since the Legislature had specifically acted in one area and refrained from acting in another, the basic proposition recognized therein was that intent can be gleaned from the Legislature's failure to do that which it could have easily done. Similarly, this court can infer that the Legislature intended not to create a civil remedy when it failed to make explicit provision for same.

Trustees cite this court to *United Stations of New Jersey v. William Kingsley,* 99 *N.J.Super.* 574 (Ch.Div.1968), aff'd 54 *N.J.* 1501 (1969), as support for its position in favor of implying a civil cause of action in this case. *United Stations* is readily

distinguishable from the case at bar, since plaintiff in that case sought injunctive relief as opposed to monetary damages.

In *United Stations*, an operator of a gasoline filling station sought injunctive relief against competing retailers for violations of a penal statute, *N.J.S.A.* 56:6–2(f), which prohibited operators of service stations from using "games of chance" in connection with sales of motor fuels. Plaintiff moved for summary judgment and the defendants contended, among other things, that plaintiff had no standing to sue for injunctive relief from violations of a statute which was strictly penal in nature. Defendants argued that the statute did not authorize suits by private parties against violators of the statute. The court ultimately held that plaintiff had standing to sue and that the statute permitted a *private* remedy of injunction.

The nature of the relief sought in *United Stations* is the key to distinguishing that case from the one at bar. The right of an individual to seek to *enjoin* another from violating a legislative decree embodied in a statute or ordinance was recognized but that right is far more compelling and far different from allowing a right to seek *personal civil monetary damage* for the violation. To allow such monetary damage would add a companion civil remedy to almost every conceivable criminal or disorderly person offense or any other legislative enactment. See *Garrou v. Teaneck Tryon Co.*, 11 *N.J.* 294, 300 (1953), where the court held that a property owner who suffers special injury through violation of a zoning ordinance has standing to obtain an equitable *injunction* against the violator.

The third prong of the *Cort* test focuses on whether or not a private cause of action would be consistent with the purposes of the legislation. In *Jalowiecki*, the court determined that although a private cause of action might help to deter violations, protracted civil litigation could not possibly be as effective in promoting environmental protection as the summary proceedings available to the Department. *Jalowiecki, supra*, 182 *N.J. Super.* at 32. The court concluded: "Therefore, while consist-

ent with the spirit of the act, such a private action would be superfluous to the achievement of the legislation's purpose." *Id.* at 32–33.

In the instant case, there can be no question that the threat of a jail sentence and/or a fine such as imposed by the Legislature here would deter a corporate officer or employee as much if not more than the threat of a civil damage suit.

A reading of the New York cases cited by Trustees makes it clear that New York has in fact adopted a legal doctrine that permits the creation of a duty from a penal statute, the breach of which gives rise to a civil cause of action. *Willy v. Mulledy,* 78 N.Y. 310 (1879); *Goldstein v. Mangano, supra, Sasso v. Vachris, supra.* This doctrine, which had its genesis in *Willy,* and which forms the underpinning of *Willy* 's progeny, has not been adopted by the courts of this state.

In *Willy,* plaintiff's decedent was killed in a fire in her rented apartment which lacked a fire escape. An existing statute required fire escapes to be erected on apartment buildings. A violation of the statute constituted a misdemeanor.

Plaintiff argued that if there had been a fire escape on the building his wife would have been able to avoid death.

The court determined that the fire escape statute created a civil duty on the part of the landlord-defendant, the breach of which, (assuming it were established), would give rise to a cause of action in damages.

> Here was, then, an absolute duty imposed upon the defendant by statute to provide a fire escape ... It is a general rule that whenever one owes another a duty, whether such duty be imposed by voluntary contract or by statute, a breach of such duty causing damage gives a cause of action. Duty and right are correlative; and where a duty is imposed, there must be a right to have it performed. [*Id.* at 314.]

Having established the requisite duty, there was no question that there had been a breach. Causation and damages were then sufficiently established, and the court affirmed the judgment that had been entered upon the verdict.

In *Goldstein v. Mangano, supra,* the court was faced with a situation very similar to the case at bar. There, plaintiff unions sued the officers of their employer for their failure to contribute pension and welfare funds pursuant to an agreement. The statute at issue was § 198–c, after which this state's statute was modeled.

In analyzing plaintiff's claim, the court first recognized the duty imposed on corporate employers viz. § 198–c and cited *Willy* in support of this proposition. *Id.* at 372. The court further qualified the *Willy* standard by imposing a requirement that the cause of action arising from the duty be one nonexistent at common law. Lastly, the court required that the plaintiff be a member of the class sought to be protected by the statute.

> Thus, there is a two-fold test which, when met, gives rise to a civil remedy where there is a statutory breach. First, the cause of action must impose liability nonexistent at common law, and, second, the plaintiff must be a member of the class for whose protection the statute was enacted. [*Id.* at 373.]

Under this test, the *Goldstein* court found that plaintiff was among the class to be protected by the statute. Additionally, it found that, under common law, *Mangano,* as a non-signatory to the collective bargaining agreement could not be charged with its breach, and, thus, the statute did create a duty nonexistent at common law.

Not only has no New Jersey case been found which supports the original *Willy* doctrine of a duty imposed by statute giving rise to a civil remedy, but in *Jalowiecki, supra,* the court, in reaffirming the *Osback* rule adopted a position directly contrary to the first prong of the *Goldstein* test which required that "the cause of action must impose liability non-existent at common law." *Id.* at 373. In *Jalowiecki,* the court cited language from *Osback, supra,* which clearly indicates that if the cause of action was nonexistent at common law, then the statute would *not* afford an implied civil remedy.

> Since no right of action by the appellant against the township existed prior to the statute, and since no right was specifically created by it, in our opinion the complaint must fall. [*Id.* 182 *N.J.Super.* at 29; emphasis supplied.]

See also *Strohmeyer v. Little Ferry*, 136 *N.J.L.* 485 (E. & A.1947).

In the instant case, it is apparent that no cause of action existed against the individual defendant at common law. The collective bargaining agreement was signed by the officers of the corporation, including defendant, in their capacity as agents of the corporation. Therefore, upon a default of the corporate obligation, and at common law, no liability would attach to the officers in their individual capacity. *N.J.S.A.* 2A:170–90.2 does not specifically create a *civil* cause of action against the individual officers or employees. Thus, the decisional law of this state is contrary to *Willy* and cannot serve as the foundation for Trustees' claim here as did *Willy* in the New York cases cited herein. Accordingly, no civil cause of action could properly be implied.

Trustees urge further support for their position in the case of *Kelsay v. Motorola, Inc.*, 74 *Ill.*2d 172, 23 *Ill.Dec.* 559, 384 *N.E.* 2d 353 (1979). There an employee claimed her employer wrongfully discharged her following the filing of an injury claim under the Workmen's Compensation Act. The Supreme Court of Illinois held that the employee had a civil tort cause of action against her employer. The court, in commenting upon the serious effect of a threatened or real retaliatory discharge, on the Workmen's Compensation Act, said:

> This result, which effectively relieves the employer of the responsibility expressly placed upon him by the legislature, is untenable and is contrary to the public policy as expressed in the Workmen's Compensation Act. We cannot believe that the legislature, even in the absence of an explicit proscription against retaliatory discharge, intended such a result. [23 *Ill.Dec.* at 563, 384 *N.E.*2d at 357.]

The court was there concerned with the ability of employers to arbitrarily discharge employees who used their statutory remedy under the Workmen's Compensation Act and determined that to allow this to continue would be violative of public policy.

In the case at bar there is nothing that will prevent the statutory penalties stated in *N.J.S.A.* 2A:170–90.2 from being assessed against employers who fail to pay wages or benefits within the time specified. The result in *Kelsay* can also be distinguished in that the Workmen's Compensation Act is a remedial law, one that replaced the right of an employee to sue his employer in tort, which right arises only upon some injury to the employee which the state wishes remedied by the Act. The purpose of *N.J.S.A.* 2A:170–90.2 however is to penalize an employer who is a party to a collective bargaining agreement if such employer does not make the agreed upon payments of wages or benefits within the time specified. Thus the aim of the statute is not thwarted and there is no need for the state to seek to impose an additional remedy to prevent its policy from being enforced.

For the reasons herein expressed, this court declines to impose personal civil liability upon the defendant. The complaint is dismissed. Counsel for defendant shall submit an appropriate order.