Max Bloom, J.
Defendant is charged, in three separate informations, with violating section 962-a of the Penal Law. That section provides that ‘ ‘ any employer who is party to an agreement to pay or provide benefits, or wage supplements as defined in section two hundred twenty of the labor law, and who fails, neglects or refuses to pay the amount or amounts necessary to provide such benefits or furnish such supplements within thirty days after such payments are required to be made ” shall be guilty of a misdemeanor. It further provides that “ Where such employer is a corporation, the president, secretary, treasurer or officers exercising corresponding functions shall each be guilty of a misdemeanor.”
One information (Docket No. 2134), charges that Advancement Devices, Inc., a corporation of which defendant was president, failed to pay to the Annuity Fund of the Joint Industrial Board of the Electrical Industry the sum of $704 due to that fund on work performed by one Jack Schwartz, an employee of Advancement. Another (Docket No. 2135) charges that the corporation failed to pay to Leo Smith, another employee of Advancement, the sum of $90 due him in vacation pay. The third information (Docket No. 2136), charges that the corporation failed to pay to the Employees Retirement Fund of the Electrical Manufacturing Industry the sum of $889.56 due to that fund. In each instance it is alleged that such sums have been due and owing for more than 30 days.
The record, composed in the main of a stipulation entered into by the District Attorney, supplemented by oral and documentary evidence, is not wholly satisfactory. Be that as it may, it dis *986 closes that Advancement Devices, Inc., a corporation engaged in the manufacture of electronic equipment, was organized in or about August, 1960. In October or November of that year Advancement merged with Cold Cathode Corp., a corporation engaged in the manufacture of fluorescent equipment. Initially, the merged corporation was known as Cold Cathode Corp. Subsequently, it changed its name to Advancement Devices, Inc.
At all times pertinent to the issues herein raised the merged corporation was in collective bargaining relationship with Local 3 of the International Brotherhood of Electrical Workers. Since Local 3 required separate collective agreements for the electronics and fluorescent industries, the two branches of the business were treated, in their relationship with Local 3, as though they remained separate entities. Under the collective agreement covering the fluorescent phase of the business, Advancement was required to pay to the Annuity Fund of the Joint Industrial Board of the Electrical Industry the sum of $1 for each day worked by each employee within the unit of representation. The purpose of the Annuity Fund was to provide annuities for workers entitled thereto. Rights of eligible workers were vested. Under the collective agreement covering the electronics phase of Advancement’s business, Advancement was required to pay to the Employees Retirement Fund of the Electrical Manufacturing Industry a sum equal to 5% of the gross payrolls of all employees within the unit. The Retirement Fund is a pooled fund which provides specified benefits to workers covered thereby who are eligible therefor. The collective agreement covering the electronics industry also mandated that vacation payments be made to employees within the unit in accordance with a prescribed schedule.
In September, 1961, defendant became president of Advancement. He remained in that capacity until June 30, 1962, when he was superseded by one Pinkerton. Thereafter, defendant continued to serve the corporation in the capacity of vice-president in charge of engineering and manufacturing.
On June 18, 1962, defendant had brought to his attention, somewhat forcefully, the fact that Advancement was in arrears in payment of its obligations to the Annuity Fund, for after a conversation with respect thereto between defendant and George Schuck, a representative of the Joint Board of the Electrical Industry, Local 3 declared a stoppage at Advancement’s plant. The following day, as the result of a further conference had by defendant with Schuck, Advancement agreed in writing to amortize its indebtedness to the Annuity Fund at the rate of *987 $700 per month. No similar agreement was ever made with the Retirement Fund.
The payment of $700 required to he made to the Annuity Fund in June was made. However, on July 1, 1962, defendant was superseded as president of Advancement by Pinkerton and defendant became vice-president in charge of engineering and manufacturing. Pinkerton instructed the other officers of Advancement that they were not to deal with Local 3 and that he would appoint a representative to deal with it. No such appointment was made.
Advancement defaulted in making the $700 payments to the Annuity Fund in both July and August. On September 19,1962, the corporation assigned for the benefit of creditors. Presumptively, it thereafter discontinued its operations. In any event, no further payments were made to either of the funds. It is conceded that some portion of the moneys due to each of the funds had been owing for at least 30 days prior to June 30, 1962.
At the threshold, defendant attacks the constitutional validity of the statute on the ground that it is too imprecise and indefinite to admit of criminal sanctions. Lurking in the background, and raised only obliquely by the defendant is a further constitutional problem. Section 16 of article III of the State Constitution, in defining, in part, the power of the Legislature, mandates that “No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law, or part thereof, shall be applicable, except by inserting it in such act.” Inasmuch as section 962-a incorporates by reference the definition of “wage supplements ” set forth in section 220 (subd. 5, par. b) of the Labor Law, a possible violation of the Constitution is posed.
It is axiomatic that “ Statutes which create crimes must be definite in specifying conduct which is condemned or prohibited. They must afford some comprehensible guide, rule or information as to what must be done and what must be avoided, to the end that ordinary members of society may know how to comply with its requirements ” (People v. Caswell-Massey Co., 6 N Y 2d 497, 501; People v. Grogan, 260 N. Y. 138, 145). “ Words which are vague and fluid (cf. United States v. Cohen Grocery Co., 255 U. S. 81) may be as much a trap for the innocent as the ancient laws of Caligula” (United States v. Cardiff, 344 U. S. 174, 176; see, also, People v. Firth, 3 N Y 2d 472). Since statutes penal in nature must be strictly construed, the purpose of the requirement of definiteness is to exclude application of *988 the statute to situations which are not within its specific embrace (People v. Vetri, 309 N. Y. 401; People v. Benc, 288 N. Y. 318). Conversely, where a statute gives reasonable notice of what it requires done and what it requires be avoided, there is no conflict with the concept of due process (People v. Greenwald, 299 N. Y. 271).
Defendant’s claim of lack of specificity is bottomed on the contention that although section 962-a makes it a misdemeanor for an employer who is party to an agreement requiring payment of or provision for benefits or ‘1 wage supplements” as defined in section 220 of the Labor Law to fail to make such payments or to provide such benefits or supplements, there is no definition of the term “ wage supplement ” in section 220 of the Labor Law. It is undisputed however, that section 220 (subd. 5, par. b) does define “ supplements ” as “all remuneration for employment paid in any medium other than cash, or reimbursement for expenses, or any payments which are not ‘ wages ’ within the meaning of the law, including, but not limited to, health, welfare, non-occupational disability, retirement, vacation benefits, holiday pay and life insurance.” And it is clear beyond dispute that the “ supplements ” defined in section 220 of the Labor Law are one with the ‘1 wage supplements ’ ’ referred to in section 962-a of the Penal Law. Bead together, the statutes give reasonable notice of what they require be done and what they require be avoided (People v. Greenwald, supra). Hence, there is no conflict with the requirement of due process.
We come next to the issue posed by section 16 of article III of the Constitution. There is here no incorporation of section 220 of the Labor Law, in whole or in part, in section 962-a of the Penal Law. There is merely “ the borrowing of a definition * * * This is the plain meaning of the language used ” (People v. Travato, 28 Misc 2d 471, 475). Although no common thread is to be discerned from the cases interpreting section 16 of article III, People ex rel. Price v. Sheffield Farms (225 N. Y. 25) persuades the conclusion that no violation of a constitutional limitation is here involved. There the attack was directed against section 1275 of the Penal Law which, in omnibus language, provides that any violation of the Labor Law, the Industrial Code or any rule, regulation or lawful order of the Department of Labor, the Industrial Commissioner or the Industrial Board is a misdemeanor. Despite this all-inclusive incorporation the court held that no constitutional caveat had been violated.
Accordingly, we conclude that the statute here attacked is constitutionally sound.
*989 Since defendant does not question that the funds here involved are legally constituted under section 302 (subd. [c], par. [5]) of the National Labor Relations Act, as amended (Ú. S. Code, tit. 29, § 186, subd. [c], par. [5]; cf. Budget Dress Corp. v. Joint Bd., 198 F. Supp. 4, affd. 299 F. 2d 936, cert, denied 371 U. S. 815; Minkoff v. Scranton Frocks, 181 F. Supp. 542, affd. 279 F. 2d 115), we direct our attention to the remaining issues raised. With respect to the moneys due to the Annuity Fund and to the Retirement Fund defendant contends that the “ agreement ” to liquidate the arrears at the rate of $700 per month extinguished the “old” indebtedness and created a “new” one; that Advancement made payment on this “new” indebtedness so long as defendant remained president, and that, by consequence, defendant bears no responsibility for any violation of section 962-a by Advancement. With respect to the vacation payments due Smith, defendant contends that in July or August, 1962, Smith actually took a vacation and was paid therefor; and, in any event, Smith’s right to his vacation did not mature, under the collective agreement, until July, 1962, at which time defendant was no longer president of Advancement. Hence, argues defendant, here too he bears no responsibility for any violation of section 962-a by Advancement.
So far as concerns the Retirement Fund, the record is clear that no agreement was ever entered into with respect to the liquidation of Advancement’s obligation to that fund. And, it is conceded that at least $84 was owing to that fund on June 30, 1962, and for at least 30 days prior thereto. Hence, defendant’s contentions constitute no defense with respect to the information charging failure to make payments to the Retirement Fund.
So far as concerns the Annuity Fund, the “agreement” claimed to have been entered into with Schuck on behalf of that fund consisted of an unilateral undertaking by Advancement to amortize its deliquency at the rate of $700 per month. Advancement’s purpose was to terminate the stoppage then in effect. Although the agreement might be construed to limit the right of Local 3 thereafter to engage in self-help to compel Advancement to pay the entire arrearage at once, it did not affect the nature or amount of the underlying obligation, or the dates on which the payments became due. On June 17, 1962, the whole amount due from Advancement was payable. On June 19, 1962, after defendant, on behalf of Advancement, had executed the memorandum, the same amount remained due and immediately payable. All procedures available to compel immediate payment, with a single exception — that of a strike or stoppage by Local 3 — still remained available. It follows therefrom that the *990 so-called agreement of June 19,1962 did not divest Advancement of any obligation which it owed to the Annuity Fund immediately prior thereto.
A different situation is presented by the claim of failure to pay vacation pay to Smith. The record demonstrates that after July 1,1962, Smith did, in fact, take a vacation and that he was paid therefor. Despite persistent probing by the court the evidence does not disclose whether the sum of $84 claimed to be due to Smith as vacation pay was a balance remaining over after payment to Smith for the vacation actually taken by him, or whether his vacation actually absorbed all, or only some part, of this claimed vacation pay. By consequence, a vital link in the chain of the People’s evidence remains missing.
Accordingly, defendant’s motion to dismiss, made at the close of the entire case, is granted with respect to Docket No. 2185, and the defendant is acquitted on that information. The motion is denied with respect to Docket No. 2134 and Docket No. 2136 and defendant is found guilty on both informations.
Concur — T. Vincent Quinn and James J. Comeeeoed, JJ.