OPINION OF THE COURT
Harvey M. Sklaver, J.
Defendants Alexander Burger and Irwin Goldfeder are charged with having violated Labor Law § 198-c, in that Art Steel Company, Inc. (Art Steel), a corporation in which they were officers, willfully failed to pay supplemental wage benefits.[1] They now move to dismiss the information pursuant to (i) CPL 170.30 (1) (a) on the grounds that the information is defective under 170.35 (1) (a) and 170.35 (1) (c) and (ii) CPL 170.40 in furtherance of justice.
Before enumerating the issues raised, it will be helpful to set forth the facts, all of which are essentially undisputed.[2]
During the period relevant to this proceeding Art Steel and its employees operated under a collective bargaining agreement which ran from November 6, 1980 to November 5, 1983, and which was extended for one year on November 23, 1983. The agreement provided for the payment of vacation benefits pursuant to a schedule set forth therein. Employees who worked at least 1,752 hours during the year[3] were entitled to the full yearly benefits while those who did not were entitled to half benefits if they worked at least 876 hours. It appears that on March 11, 1982, Art Steel filed a voluntary petition for arrangement under Bankruptcy Code chapter 11 and that it continued its operations as debtor in possession. It further appears that on February 27, 1984, an order was entered *1003 converting the chapter 11 to a chapter 7 proceeding and a trustee was appointed to liquidate the business. On that date the trustee terminated the employment of all employees, including Messrs. Burger and Goldfeder.
This criminal proceeding followed since vacation benefits for the 1984 year had not been paid.[4]
Defendants assign several grounds upon which the proceeding ought to be dismissed: (1) The information is defective in that neither it, nor the supporting depositions, contains non-hearsay allegations from which the court can conclude that the defendants committed any offense; (2) as to the 61 employees who were discharged by the trustee, the defendants were not in control of Art Steel 30 days after the vacation benefits became due, i.e., the date of termination; (3) as to the 15 employees who were discharged prior to the conversion to chapter 7 proceedings, under the Bankruptcy Code the defendants could not pay those benefits without a court order held after a hearing at which the creditor’s committee would be heard, that argument being based on the Federal preemption doctrine;[5] (4) this criminal proceeding may not be brought because the National Labor Relations Act (29 USC § 141 et seq.) preempts the field; (5) this proceeding may not be brought because the Employee Retirement Income Security Act (ER-ISA) (29 USC § 1001 et seq.) preempts the field, and (6) the defendants urge that the proceeding should be dismissed in furtherance of justice.
Labor Law § 198-c provides that "any employer who is party to an agreement to pay * * * wage supplements to employees * * * and who fails * * * [to] furnish such supplements within thirty days after such payments are required to be made, shall be guilty of a misdemeanor * * * Where such employer is a corporation, the president, secretary, treasurer or officers exercising corresponding functions shall each be guilty of a *1004 misdemeanor.” The parties do not dispute that vacation pay falls within section 198-c.
i.
The general rule is that penal statutes are to be strictly construed (McKinney’s Cons Laws of NY, Book 1, Statutes § 271 [a]). The more relaxed rule of construction found in Penal Law § 5.00 is limited to crimes enumerated in that chapter of the consolidated laws and has no application to construction of other penal statutes of the State (McKinney’s Cons Laws of NY, Book 1, Statutes § 276; People v Thomas, 71 Misc 339; People v Sansanese, 17 NY2d 302). More directly in point, it has been held that the predecessor to Labor Law § 198-a (which imposes criminal sanctions for failure to pay direct wages) was to be strictly construed (People v Meyers & Son, 23 AD2d 942).
As to the 61 employees who were discharged by the bankruptcy trustee on February 27, 1984, there is no dispute that the defendants were not officers of Art Steel at the time of discharge nor on the 30th day after the appointment of the bankruptcy trustee on that date. Consequently, the defendants do not fall within the scope of section 198-c as to those employees. This case is unlike People v Doundoulakis (38 Misc 2d 984) in which amounts of money had already remained due and unpaid for more than 30 days at the time that the defendant was superseded as president of the corporation.
In the immediately preceding paragraph, this court proceeded from the premise, as asserted by the People, that vacation benefits became due on February 27th, the day employment was terminated. However, with respect to the 15 persons whose employment terminated prior to February 27th it becomes necessary to test that assumption. In Matter of Ross v Specialty Insulation Mfg. Co. (71 AD2d 766) and Matter of Glenville Gage Co. v Industrial Bd. of Appeals (70 AD2d 283, affd 52 NY2d 777) section 198-c was construed to require only that the employer abide by the terms of its agreement to provide benefits. In both of those cases the agreements required that the employee be in service at the time that vacation benefits were required to be paid. The court held that there could be no proration of benefits for employees who were not in service on the agreed payment date, determining, *1005 in effect, that the agreement is to be strictly construed according to its provisions.
In the present case, the agreement does provide for pro rata benefits (art VI, § 1, subd G) but with respect to the time of payment of these benefits the agreement is silent. Subdivision D, which is the only provision relating to the time of payment, provides: "The vacation shutdown shall be designated by employer at least eight (8) weeks prior to the time it is scheduled to begin, and vacation monies shall be paid on the pay day immediately preceding the beginning of the vacation. Vacation can be given at anytime after June 15th of each calendar year” (emphasis added). The second paragraph of subdivision G, which calls for prorated vacation benefits to those not in service on June 15th, provides that those employees "shall be entitled to vacation monies on a pro-rated basis in accordance with this Article VI”. Therefore, since subdivision D is the only provision relating to the time of payment and it calls for payment on the pay day preceding the vacation shutdown, the court concludes that vacation pay was not due on the various dates that the employees were discharged. Even if, by reasons of the conversion of the chapter 11 proceeding to the chapter 7 proceeding, the vacation period be deemed to have started upon the conversion, so that vacation benefits were due at the time, the result must be the same since the defendants were not officers when the payments were due nor on the 30th day thereafter so as to render them liable under Labor Law § 198-c since, according to People v Meyers & Son (supra) the section must be strictly construed.
Thus, by reason of the unique facts in this case section 198-c is not applicable.
ii.
Another ground for dismissal is that application of section 198-c in this case is preempted by ERISA (29 USC § 1144).
A. We may begin with a recognition of Gilbert v Burlington Indus. (765 F2d 320, affd — US —, 106 S Ct 3267 [June 23, 1986]) and this court’s belief that Gilbert did not resolve all the ERISA issues applicable to this case. Gilbert held that severance pay due to employees under a collective bargaining agreement falls within the definition of "employee welfare benefit plan” (29 USC § 1002 [1]) and that ERISA preempts *1006 Labor Law § 198-c.[6] In the instant case the People urge that despite Gilbert ERISA does not apply to vacation pay, citing California Hosp. Assn. v Henning (770 F2d 856, cert denied — US —, 106 S Ct 3273 [June 23, 1986]). That latter case specifically dealt with vacation payment plans. The District Court held the California statute preempted. The United States Court of Appeals reversed and held that ERISA does not apply to unfunded vacation pay plans since a regulation of the United States Department of Labor (29 CFR 2510.3-1 [b] [3]) excludes them. The People urge that the Supreme Court’s denial of certiorari lays the issue to rest. This court disagrees since a denial of certiorari is not a determination of the merits and no inference is to be drawn as to how the Supreme Court would have held had it granted certiorari (Maryland v Baltimore Radio Show, 338 US 912, 919)[7] Accordingly, this court is not bound by the United States Court of Appeals decision in California Hosp. Assn. (supra) and must make its own determination of the issue.
In California Hosp. Assn. (supra) the District Court had held the Department of Labor regulation to be invalid as being contrary to the express language of 29 USC § 1002 (1) which states: "The terms 'employee welfare benefit plan’ and 'welfare plan’ mean any plan, fund or program * * * maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services” (emphasis added). Without engaging in an extensive analysis of the two California Hosp. Assn, decisions it is sufficient for present purposes to say only that this court believes that the decision of the District Court more nearly *1007 comports with the language of the statute.[8] (See also, Blakeman v Mead Containers, 779 F2d 1146, which also held a vacation plan within the scope of ERISA.) But that does not end the inquiry. It only requires the court to proceed further.
B. 29 USC § 1003 (a) provides that the ERISA sections which affect this proceeding apply to any employee benefit plan established or maintained "by any employer engaged in commerce or in any industry or activity affecting commerce”. In this regard, the word "commerce” is defined in 29 USC § 1002 (11) as "trade, traffic, commerce, transportation, or communication between any State and any place outside thereof.” There does not appear to be any judicial construction of this definition as it relates to ERISA. However, since "Congress applied the principle of pre-emption 'in its broadest sense to foreclose any non-Federal regulation of employee benefits plans,’ creating only very limited exceptions to preemption” (Shaw v Delta Air Lines, 463 US 85, 104), the terms "engaged in commerce” and "affecting commerce” should be given the most expansive construction constitutionally permissible. From documents filed with the Bankruptcy Court it appears beyond question that Art Steel, as debtor in possession, was engaged in interstate commerce immediately prior to the chapter 7 conversion.[9]
C. There is yet another point to consider on this issue. 29 USC § 1144, which is the preemption section, provides in subdivision (b) (4), that preemption shall not apply "to any generally applicable criminal law of a State.”[10] The key words here are "generally applicable”. Those words are not defined in the statute and courts have differed as to their meaning. Goldstein v Mangano (99 Misc 2d 523) held the criminal law exemption applicable so as to keep Labor Law § 198-c outside of ERISA and thereby permit a civil action under that section. *1008 That holding was sharply criticized in Calhoon v Bonnabel (560 F Supp 101 [US Dist Ct, SDNY]) as contrary to the plain language of 29 USC § 1002.[11] Goldstein was followed in Sasso v Vachris (116 Misc 2d 797), another civil action which held that ERISA does not preempt section 198-c. On appeal, the Appellate Division in Sasso (106 AD2d 132, 141) did not address section 198-c because of the intervening decision of the Court of Appeals in Stoganovic v Dinolfo (61 NY2d 812). Plaintiffs did not challenge that portion of the Appellate Division’s order which directed dismissal of the section 198-c claim. The Court of Appeals in Sasso (66 NY2d 28) dealt only with the questions of whether ERISA preempts Business Corporation Law § 620 and held that it does not.
As there is no appellate authority in New York on the issue, this court is free to undertake its own analysis. It appears that the court in Goldstein (supra) reached its decision by applying the definition that a generally applicable criminal law is one which extends to the entire State and embraces all persons or things of a particular class (McKinney’s Cons Laws of NY, Book 1, Statutes § 32 [b]) and, since Labor Law § 198-c was former Penal Law § 962-a, it follows that section 198-c must be a generally applicable law. However, the equally rational inference may be drawn that the Legislature, in removing the section from the Penal Law to the Labor Law, recognized the section to be not one of general application. The suggestion that the Legislature intended merely a "reclassification” loses force when it is recognized that the change caused the section to be strictly construed instead of being subject to the more liberal rule of Penal Law § 5.00 (People v Meyers & Son, supra). In any event, in construing a Federal statute a court must look to what Congress intended, not what a particular State Legislature may have intended under other circumstances. This is specially true of ERISA for, as stated in Marshall v Chase Manhattan Bank (558 F2d 680, 683): "The superior federal interest sought to be vindicated here is clear from §§ 502 and 514 of the Act as well as its legislative history which establish the congressional intent that the United States regulate the field of employee benefit plans eliminating the threat of conflicting and inconsistent local regulation.” See, National Carriers’ Conference Comm. v Heffernan (454 F *1009 Supp 914) for the legislative history of ERISA. Query, then, what did Congress intend? As relates to the generally applicable criminal law exemption, the court, in Trustees of Sheet Metal Workers’ Intl. Assn. v Aberdeen Blower & Sheet Metal Workers, 559 F Supp 561, 563) stated: "No doubt Congress did not wish to supersede criminal laws applying in general terms to conduct such as larceny or embezzlement. But if the words 'generally applicable’ contained in the exception are to mean anything, laws aimed specifically at benefit plans cannot stand”. (See also, Sforza v Kenco Constructional Contr., 629 F Supp 489, and cases cited therein.) That court stated that "[t]he weight of authority holds that laws which impose criminal sanctions for failure to make contributions to an employee benefit plan are not generally applicable criminal laws” (629 F Supp, at 491). Significantly, a Massachusetts statute which is substantially similar to section 198-c has been held to be preempted by ERISA (Commonwealth v Federico, 383 Mass 485, 419 NE2d 1374).
This court is inclined to agree with the decisions of the United States District Courts as well as the Massachusetts court since the ERISA exemptions were meant to be narrowly construed (cf. American Progressive Life & Health Ins. Co. v Corcoran, 715 F2d 784, 786). This court believes that Congress, in using the words "generally applicable”, intended them to mean only criminal laws generally applicable throughout the Nation as, for example, larceny or embezzlement. To adopt the construction urged by the People could lead to absurd results. For example, under the People’s interpretation a State could enact a law making it a misdemeanor for an employer to contribute to an employee pension fund in compliance with a collective bargaining agreement at a time that the employer is delinquent in the payment of any State tax. Such a statute would probably be preempted (National Carriers’ Conference Comm. v Heffernan, supra; Franchise Tax Bd. v Construction Laborers Vacation Trust for S. Cal., 679 F2d 1307). While the judgment in the latter case was vacated and remanded on other grounds (463 US 1, 26), the Supreme Court noted that "the Court of Appeals may well be correct that ERISA precludes enforcement of the State’s [tax] levy in the circumstances of this case”.
D. There is yet one more facet of the problem to consider, namely, the Court of Appeals decision in Sasso v Vachris (66 NY2d 28, supra). While that decision dealt only with the Business Corporation Law § 620 the court’s analysis could be *1010 read equally applicable to Labor Law § 198-c. However, there are a number of important distinctions between the two sections. First, Business Corporation Law § 620 provides for civil remedies while Labor Law § 198-c is a criminal statute. Related to this is the fact that ERISA’s exemption from State sanctions extends only to "generally applicable” criminal law. Second, Business Corporation Law § 620 imposes liability on shareholders who need not be employees while Labor Law § 198-c is directed only at officers who are themselves employees and, perhaps, even themselves beneficiaries of the plan.
Aside from these differences between the two statutes, this court believes that our Court of Appeals would not extend the Sasso rationale to section 198-c. Subsequent to Sasso, on June 23, 1986, the United States Supreme Court affirmed Gilbert v Burlington Indus. (765 F2d 320, supra), which specifically held that section 198-c is preempted by ERISA. The Supreme Court’s summary affirmance (— US —, 106 S Ct 3267, supra) means that its determination was on the merits and, consequently, binding on our Court of Appeals (People v Davis, 43 NY2d 17, 30).[12]
E. Viewing this case in perspective, it appears that the defendants are being prosecuted by the State for failing to make payments which, under Federal laws, the State cannot compel them to make (Calhoon v Bonnabel, supra).[13] This is even more egregious than the statute in Perez v Campbell (402 US 637) which was stricken by the Supreme Court. There, the Arizona statute provided that if judgment arising out of an automobile accident was not paid within 60 days after entry, the judgment debtor’s driving license and vehicle registration would be suspended until the judgment was paid. The statute further provided that a discharge in bankruptcy following entry of the judgment would not relieve the judgment debtor of the obligation to pay the judgment in order for the license and registration to be reinstated. The latter provision was struck as repugnant to the provisions of the Bankruptcy Act. *1011 While the Supreme Court found it unnecessary to address the petitioners’ due process argument (p 643, n 10) this court believes it to be substantial[14] because the result sought by the People here is contrary to American concepts of jurisprudence. Labor Law § 198-c falls short of fundamental fairness in its application in this case.[15]
m.
The other two grounds for dismissal advanced by the defendants (preemption by the Bankruptcy Code and the National Labor Relations Act [NLRA]) are without merit.
A. As to the claim of bankruptcy preemption, defendants assert separate arguments regarding the employees who were discharged during the chapter 11 proceeding and those who were discharged by the chapter 7 trustee. Regarding the former, defendants assert that Art Steel could not have made vacation benefits payments without approval of the creditors’ committee and the Bankruptcy Court; regarding the latter, defendants assert that the payments could not be made except as part of the over-all distribution to all creditors and then only upon approval of the Bankruptcy Court.
Examination of the issue as to the first group of employees must begin with 28 USC § 959 which provides in pertinent part:
"(a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property.
"(b) * * * a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession * * * according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.”
Thus, the Bankruptcy Code "does not change the business and *1012 regulatory environment in which a debtor operates. A debtor in possession under Chapter 11 is not pro tanto excused by virtue of its bankruptcy from complying with valid and enforceable state and local regulation. By virtue of 28 U.S.C. § 959 (b), it is required to obey them.” (In re Beker Indus. Corp., 57 Bankr 611, 624.) Of course, if the State statute conflicts with the Bankruptcy Code it must yield (Perez v Campbell, 402 US 637, supra). The issue, then, is whether Labor Law § 198-c conflicts with the Bankruptcy Code.
Art Steel, as debtor in possession, had all the right and obligations of a bankruptcy trustee (11 USC §§ 1107, 1106) and was a fiduciary for creditors (Wolf v Weinstein, 372 US 633). Because the debtor in possession was a corporation the officers were deemed to be the fiduciaries (Wolf v Weinstein, supra, pp 649-650; Maguire v Puente, 120 Misc 2d 871). Indeed, in Matter of Turner (13 Bankr 15, 23), the court went so far as to hold the corporate officer to be an officer of the court.[16]
A debtor in possession is authorized to operate the business (11 USC §§ 1106, 1107, 1108). Payments by the debtor in the ordinary course of business need not be approved by the Bankruptcy Court at all (In re James A. Phillips, Inc., 29 Bankr 391, 394). In that case, also, the court .continued: "The touchstone of 'ordinariness’ is thus the interested parties’ reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business. So long as the transactions conducted are consistent with these expectations, creditors have no right to notice and hearing”.
The making of ordinary employment contracts, even collective bargaining agreements, are ordinary transactions not requiring court approval (In re Wil-Low Cafeterias, 111 F2d 429) although, in practice, such approval often is obtained (see, Matter of Schatz Fed. Bearings Co., 5 Bankr 549). Thus, since 11 USC § 1108 authorizes the debtor in possession to continue the business and insofar as a collective bargaining agreement is an ordinary business transaction and 28 USC § 959 requires that the business be conducted in accordance with State law, the court finds that Labor Law § 198-c is not in conflict with the Bankruptcy Code.
Defendants note that in the prior year they paid only 50% of the vacation benefits and only upon the approval of the creditor’s committee and the Bankruptcy Court. That is not *1013 dispositive of the issue since court approval always may be sought, even if not required. Also, in the earlier instance, court approval was required for a separate reason, namely, Art Steel had to borrow funds from Marine Midland Bank so as to provide funds for it to pay the vacation benefits in June 1983.[17] When a debtor in possession borrows money a court order is usually required to protect the interest of the lender (see, In re Lockwood Enters., 52 Bankr 871; Wolf v Nazareth Fair Grounds & Farmers’ Mkt., 280 F2d 891).
As to the second group of employees, those discharged by the trustee, it is not necessary to discuss bankruptcy law issues since the defendants were not officers at the time of discharge nor at any time thereafter.[18]
B. Defendants also urge that remedies for breaches of collective bargaining agreements are governed by the provisions of the National Labor Relations Act which preempt any State-created remedies. They cite Ferro Mechanical Corp. (249 NLRB 669) and Good Foods Mfg. & Processing Corp. (195 NLRB 418, 1972 CCH NLRB ¶ 23,908) as holding that the failure to pay vacations benefits falls within the NLRA.
It is axiomatic, however, that for the provisions of that act to apply there must exist an "unfair labor practice” as defined in section 8 of the act (29 USC § 158). And while many breaches of collective bargaining agreements result in unfair labor practices, that result does not invariably follow (Kohls v National Labor Relations Bd., 629 F2d 173; Pittsburgh Plate Glass Co. v National Labor Relations Bd., 427 F2d 936, affd sub nom. Chemical Workers v Pittsburgh Glass, 404 US 157). A careful reading of Ferro Mechanical Corp. (supra) and Good Foods Mfg. & Processing Corp. (supra) reveals that the employers there committed unfair labor practices, not simply by failing to pay vacation benefits but by failing to bargain collectively as required by sections 8 (a) (1) and (5) of the act. Of course, the question of whether a collective bargaining *1014 agreement has been breached is within the jurisdiction of the NLRB if the breach itself would be an unfair labor practice and the issue is "fairly debatable” (National Metalcrafters v NcNeil, 784 F2d 817, 825). Although defendants acknowledge that Art Steel’s failure to pay the vacation benefits is a breach of the collective bargaining agreement, this court is not persuaded that Art Steel’s breach constituted an unfair labor practice as defined in section 8 of the act.
Accordingly, the court concludes that this proceeding is not preempted by the NLRA.[19]
IV.
In light of the foregoing the court need not address the branch of the motion seeking dismissal in furtherance of justice pursuant to CPL 170.40. Also, the court does not address the issue of whether the information must be dismissed under CPL 170.30 (1) (a) and 170.35 (1) (a) or on the basis of the inconsistencies set forth in footnote 3, supra, as any defect could be corrected in a superseding information.
Accordingly, the motion is granted and the informations are dismissed.

. An information was also filed against Art Steel but that proceeding was stayed by order of the United States Bankruptcy Court dated May 15, 1986. Accordingly, as used herein, the term "defendants” refers only to Messrs. Burger and Goldfeder.

. To the extent that the assertions in the moving and opposing papers raise any factual questions, those questions have been resolved, for purposes of this motion, most favorably to the People and against the defendants.

. The parties appear to be confused as to the proper meaning of "year”. The employees’ supporting depositions refer to the "vacation year”, an undefined term which the court takes to be the year ending June 15th. On the other hand, the information refers to the "contract year” which would appear to be the year November 6th to the ensuing November 5th. However, the portion of the contract attached to the moving papers refers to the "calendar year”. Neither party addressed this apparent inconsistency. For purposes of this motion, the court takes the term to mean the calendar year preceding the vacation since that is consistent with the remainder of the agreement.

. The information herein alleges nonpayment of vacation benefits to 76 employees (exclusive of Burger and Goldfeder), 61 of whom were discharged by the trustee on February 27, 1974 and 15 whose employment terminated prior thereto on various dates beginning with December 9, 1983. The papers do not reveal whether these employers resigned or were discharged nor, if the latter, whether discharge was with or without cause.

. Defendants urge the Bankruptcy Code’s preemption with respect to the other 61 employees as well. Additionally, with respect to all employees, defendants note that in the previous year Art Steel paid only 50% of the vacation benefits, the reduction being at the insistence of the creditors’ committee and only after a court order to that effect.

. One can only speculate as to the court’s addressing the ERISA issue in that civil action rather than simply dismissing on the basis of Stoganovic v Dinolfo (61 NY2d 812). This court chooses to believe that the United States Court of Appeals wanted to set forth its views for the guidance of the District Courts in the other States embraced by the Second Circuit.

. A summary affirmance by the Supreme Court, as in Gilbert v Burlington Indus. (765 F2d 320, affd — US —, 106 S Ct 3267) is to be distinguished from a denial of certiorari. The former is a determination on the merits without any indication by the Supreme Court as to whether it agrees or disagrees with the reasoning of the court below (Delta Air Lines v Kramarsky, 650 F2d 1287, 1295).

. This result may not be what Congress intended but it is mandated by what Congress said. (For application of this principle in another context, see, Kamm v Drake, 117 Misc 2d 658.)

. For example, a proof of claim filed by a commission agent in Lansing, Michigan, shows that he took order in Michigan for more than $250,000 during the period September 1983 to February 1984. Also, the chapter 11 proceeding was brought on behalf of "Art Steel Company, Inc. formerly doing business as Art Steel of California, Steelmaster, ASCO and Art Steel Co., Inc.”

. It should be noted that neither Gilbert v Burlington Indus. (765 F2d 320, affd — US —, 106 S Ct 3267) nor California Hosp. Assn. v Henning (770 F2d 856, cert denied — US —, 106 S Ct 3273) involved a prosecution under State criminal law.

. In Calhoon v Bonnabel (560 F Supp 101), the court did not reach a definition of "generally applicable criminal law” since the court was dealing with a civil action.

. While a summary affirmance has precedent value only as to the issues actually presented and necessarily decided, it is clear from an analysis of the case that the Supreme Court could not have affirmed the United States Court of Appeals absent a determination that section 198-c is preempted. Reference to the appellee’s motion in the Supreme Court to dismiss or affirm (pp 5, 16-19 thereof) reveals that the precise issue was presented to the Supreme Court.

. This situation is to be distinguished from one in which the State itself imposes only criminal sanctions (e.g., Stoganovic v Dinolfo, 61 NY2d 812).

. Perhaps the lower courts in Perez v Campbell (402 US 637) found that question insubstantial because they relied on two earlier Supreme Court decisions (Kresler v Department of Public Safety, 369 US 153; Reitz v Mealey, 314 US 33) which the Supreme Court specifically overruled in Perez.

. For the concepts of fundamental fairness as embodied in the Constitution, see, In re Winship (397 US 358, 361-363).

. Thus, for purposes of the ensuing discussion the court will treat the defendants as if they, themselves, were the debtor in possession.

. This fact is gleaned from the July 21, 1983 order of the Bankruptcy Court.

. A separate question is presented when an employee is discharged by the defendant officer who is himself discharged less than 30 days thereafter. When does that defendant’s liability attach, if ever? That situation occurred as two employees who were discharged earlier in February 1984. This is unlike People v Doundoulakis (38 Misc 2d 984) in which the defendant officer was himself discharged more than 30 days after the payment first became due. However, the court need not address that question in light of the disposition on other grounds herein.

. See also, Smith v Evening News Assn. (371 US 195) as to a private action for breach of contract when the employer’s acts do constitute an unfair labor practice.